UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                        Case No. 8:19-cr-9-T-60SPF

GLENN FRANCIS
_____/

**ORDER**

Before the Court is the United States of America's Motion for a Finding that a

Sufficiently Important Government Interest Warrants Restoration of the Defendant's

Competency to Stand Trial (Doc. 93) and Defendant Glenn Francis' response in

opposition (Doc. 97).  For the reasons set forth below, the United States' motion is

granted.

**BACKGROUND**

On December 5, 2019, following a motion by defense counsel, the Court ordered

Mr. Francis hospitalized for competency restoration.  (Doc. 65).  On June 26, 2020, the

Mental Health Department of the Federal Medical Center in Butner, North Carolina

("Butner"), issued a sealed report (Doc. S-92) indicating that the defendant was not

competent to stand trial and was refusing to accept the medication necessary to render

him competent to stand trial.  In the report, Butner acknowledged that, pursuant to *Sell*

*v. United States*, 539 U.S. 166 (2003), it could not medicate the defendant without his

consent, unless the Court first determined that the four prerequisites outlined in *Sell* had

been met.  Butner proposed that the Court start by determining whether the first *Sell*

prerequisite—important governmental interests—existed in this case.  On July 7, 2020,

the Court held a status conference at which the parties agreed to the procedure recommended by Butner.  Accordingly, the Court ordered the parties to brief the first *Sell* factor. (Doc.  91).

## ANALYSIS

In *Sell*, the Supreme Court found that it was constitutionally permissible to administer antipsychotic medication to a mentally ill detainee in order to render him competent to stand trial if the United States shows by clear and convincing evidence: (1) the existence of "important governmental interests"; (2) that the "involuntary medication will significantly further those concomitant state interests"; (3) that the involuntary medication is "necessary" to further the important interests; and (4) that the administration of the medication is "medically appropriate, *i.e.*, in the patient's best medical interest in light of his medical condition." *Id.* at 180–81(emphasis omitted); *United States v. Diaz*, 630 F.3d 1314, 1332 (2011) (adopting clear and convincing evidence standard for factual findings underlying *Sell* factors).

"Before even applying the *Sell* factors, a district court first should consider whether involuntary medication is appropriate on the ground that the defendant poses a danger to himself or others.  Involuntary medication is permitted in those situations under *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990)." *United States v. Ruark*, 611 F. App'x 591, 593 n.5 (11th Cir. 2015).  Neither party contends that Mr. Francis is currently a danger to himself or others.  In addition, the report from Butner states that "Mr. Francis does not currently meet the criteria under *Harper*, and he resides in open population." (Doc. S-92 at 14).  The Court has not been

2

presented with any evidence to the contrary.  As a result, *Harper* does not provide a basis

for involuntary medication.  Therefore, the Court will proceed with the United States'

request that it determine whether the first *Sell* factor, important governmental interest,

has been satisfied.

As the Supreme Court noted, "[t]he Government's interest in bringing to trial an

individual accused of a serious crime is important." *Sell*, 539 U.S. at 180.  Thus, if a

crime of which Mr. Francis is accused is "serious," then the government's interest in

prosecuting Mr. Francis is "important." *United States v. Fuller*, 581 F. App'x 835, 836

(11th Cir. 2014).  But the government's interest in prosecuting those charged with serious

crimes can be mitigated by special circumstances. *Sell*, 539 U.S. at 180 (providing an

illustrative list of special circumstances that potentially lessen the government's interest

in prosecuting an otherwise serious crime).

## I.      SERIOUSNESS OF THE ALLEGED CRIME

Neither the Supreme Court, nor the Eleventh Circuit, has provided the

appropriate standard to apply when determining whether an offense is "serious." *See*

*United States v. Rodriguez*, 281 F. Supp. 3d 1284, 1293 (S.D. Fla. 2017) (noting the lack of

controlling case law).  And as one circuit court noted, there is a "debate among our sister

circuits about whether the seriousness of a crime is measured by the statutory maximum

[penalty] or the likely guideline sentence, or both." *United States v. Dillon*, 738 F.3d 284,

292 (D.C. Cir. 2013).  The Second, Fourth, Fifth, Sixth, and Eighth Circuits, for

example, place the greatest weight on the maximum penalty authorized by statute. *See*

*Rodriguez*, 281 F. Supp. 3d at 1293-94 (citing *United States v. Mackey*, 717 F.3d 569, 573

(8th Cir. 2013) ("we agree with those circuits that place the greatest weight on the maximum penalty authorized by statute"); *United States v. Gutierrez*, 704 F.3d 442, 451 (5th Cir. 2015) ("we follow the approach of several other circuits in comparing the time already served by [defendant] with the statutory maximum authorized for his indicted offenses"); *United States v. Green*, 532 F.3d 538, 550 (6th Cir. 2008) ("we conclude that a district court may rely on the potential statutory penalty to determine whether the crime meets the 'serious' requirement"); *United States v. Evans*, 404 F.3d 227, 237 (4th Cir. 2005) ("it is appropriate to focus on the maximum penalty authorized by statute in determining if a crime is 'serious' "); *United States v. Gomes*, 387 F.3d 157, 160-61 (2d Cir. 2004)).

In contrast, the Ninth Circuit has concluded that "the likely guideline range is the point for the analysis of a crime's seriousness" because it is "the best available predictor of the length of a defendant's incarceration." *United States v. Hernandez-Vasquez*, 513 F.3d 908, 919 (9th Cir. 2008). The Tenth Circuit has applied a hybrid approach finding that "whether a crime is 'serious' relates to the possible penalty the defendant faces if convicted, as well as the nature or effect of the underlying conduct for which he was charged." *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1226 (10th Cir. 2007) (considering statutory maximum penalty and potential advisory guideline imprisonment range in determining if charged offense is "serious").

Courts that favor the statutory maximum instead of the Sentencing Guidelines as a measure of seriousness do so "because the Sentencing Guidelines are not determined with certainty until after a defendant has been convicted; they are not binding on the

court, and they reflect the views of the Sentencing Commission rather than Congress."

*Rodriguez*, 281 F. Supp. 3d at 1294.  This Court agrees with the majority of circuits that

have addressed this issue and finds that the best objective measure of the seriousness of

the alleged crime is the maximum penalty authorized by statute.[1]

Mr. Francis was indicted on January 3, 2019 with one count of wire and mail

fraud conspiracy (in violation of 18 U.S.C. § 1349), five counts of wire fraud (in

violation of 18 U.S.C. § 1343), two counts of mail fraud (in violation of 18 U.S.C. §

1341), and three counts of illegal monetary transactions (in violation of 18 U.S.C. §

1957).  The United States asserts, and the defense agrees, that Mr. Francis "faces

potentially consecutive statutory maximum penalties totaling 190 years of imprisonment

for his various schemes to defraud; the maximum penalty for the highest individual

count is 20 years of imprisonment." (Doc. 93 at 9; Doc. 97 at 2). In addition, if

convicted of Counts Seven and Eight, Mr. Francis faces a mandatory consecutive

sentence of up to 10 years of imprisonment as to each count, pursuant to 18 U.S.C. §

2326(2)(B). (*Id.*). With respect to the estimated Sentencing Guidelines range, the United

States estimates a range of 120 to 151 months of imprisonment after trial (Doc. 93 at 9),

while the defense estimates a range of 108 to 135 months of imprisonment after trial or

78 to 97 months of imprisonment if Mr. Francis timely pleads guilty (Doc. 87 at 4).

---

[1] Nevertheless, the Court arrives at the same conclusion regardless of whether it
measures the seriousness of a crime by the statutory maximum penalty, the likely
guideline sentence, or a combination of both.

After considering the statutory maximum penalty, the estimated Sentencing Guidelines range, and the nature or effect of the underlying conduct for which he was charged, the Court finds that Mr. Francis is facing serious charges that establish an important governmental interest.  The Court will now determine whether special circumstances lessen the United States' interest in prosecuting an otherwise serious crime.

## II.     SPECIAL FACTORS

In *Sell*, the Supreme Court stated that courts "must consider the facts of the individual case in evaluating the Government's interest in prosecution" and noted that "[s]pecial circumstances may lessen the importance of that interest." 539 U.S. at 180*; see also United States v. Pfeifer*, 661 F. App'x 618, 620 (11th Cir. 2016).  "The Government's interest may be diminished under '[s]pecial circumstances,' such as the possibility of civil commitment amounting to lengthy confinement which could 'diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime,' or 'the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed ... ).'" *United States v. Gillis*, No. 3:11-CR-18-J-34JBT, 2011 WL 7109362, at *5 (M.D. Fla. Nov. 30, 2011) (quoting *Sell*, 539 U.S. at 180), report and recommendation adopted as modified, 2012 WL 254019 (M.D. Fla. Jan. 27, 2012).

### A. Civil Commitment

As the Eleventh Circuit recognized, "[c]ivil commitment may diminish the risks attached to releasing an accused criminal without punishment." *Ruark*, 611 F. App'x at

6

598. Mr. Francis' suggestion that "civil commitment for the remainder of his life is a very real possibility" is nothing more than conjecture. Moreover, "the mere possibility of civil commitment does not undermine the Government's interest in prosecution." *Gillis*, 2011 WL 7109362, at *6 (citing *United States v. Algere*, 396 F.Supp.2d 734, 740 (E.D.La. 2005)); *see also Sell*, 539 U.S. at 180 ("The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution."). Therefore, because there is no evidence as to the likelihood of civil commitment, the important governmental interest in this prosecution is not diminished. *See Ruark*, 611 F. App'x at 598 (no special circumstances diminished the importance of the governmental interest where there was "no evidence as to his likelihood of civil commitment").

### B. Time Served

In *Sell*, the Supreme Court also observed that if the defendant has been confined for a lengthy period of time, for which he would receive credit for any sentence ultimately imposed, that this might lessen the government's interest in his adjudication. 539 U.S. at 180. In an unpublished opinion, the Eleventh Circuit stated that the length of pretrial detention may diminish the government's interest "if an individual serves time equal to or greater than his likely sentence if found guilty." *Ruark*, 611 F. App'x at 598. In a more recent unpublished opinion, the Eleventh Circuit held that the United States met its burden of showing an important interest in medicating the defendant despite the district court's acknowledgement that the defendant's 14–month stay in prison amounted to a "sizeable portion of his expected sentence." *Pfeifer*, 661 F. App;'x at 620. Other courts have compared the length of pretrial detention to the maximum sentence.

For example, in *Evans*, the defendant—who asserted his guidelines range was likely between fourteen and twenty months—had served more than two years in pretrial confinement. 404 F.3d at 237–39.  Nevertheless, the Fourth Circuit held that the government's interest was not defeated by his pretrial confinement because the crime charged carried a ten-year maximum sentence. *Id.* at 239-40.

Because Mr. Francis faces a lengthy term of imprisonment (*supra*), the defense concedes that Mr. Francis being sentenced to time served "is not a realistic outcome." (Doc. 97 at 5).  The Court agrees.

### C.  Nature of the Crime

The Supreme Court has expressly held, with respect to this first *Sell* prerequisite, that courts "must consider the facts of the individual case in evaluating the government's interest in prosecution." *Fuller*, 581 F. App'x at 836 (quoting *Sell*, 539 U.S. at 180). Francis argues that prosecuting him "is frankly meaningless" because of his advanced age and because "there is no reasonable belief that other fraud perpetrators would suddenly stop their criminal actions" even if Mr. Francis is convicted.  (Doc. 97 at 5).

The United States contends that the nature of the crime supports its interest in prosecution because Mr. "Francis is alleged to have coordinated a multi-million dollar fraud against hundreds of primarily elderly U.S.-victims.  He did so for his own personal gain, without regard to the dire consequences suffered by his victims." (Doc. 93 at 13) The United States further asserts that Mr. Francis committed these crimes after being told by law enforcement officers three different times that he was committing fraud. The Court agrees with the United States and finds that there is an important governmental

8

interest in bringing Mr. Francis to trial for his alleged crimes. *See United States v. Baschmann*, 10-cr-300-A, 2015 WL 346719, at *1 (W.D.N.Y. Jan. 23, 2015) ("[T]he United States unquestionably has an 'important' interest in bringing to trial a defendant alleged to have orchestrated an advance-fee mortgage fraud scheme with losses of over $1 million from more than 100 victims."); *United States v. Decoteau*, 857 F. Supp. 2d 295, 302 (E.D.N.Y. 2012) (finding a wire fraud scheme with a maximum sentence of 30 years to be a serious crime and the government had an important interest in trying the defendant).

Accordingly, it is hereby **ORDERED**:

1. United States of America's Motion for a Finding that a Sufficiently Important Government Interest Warrants Restoration of the Defendant's Competency to Stand Trial (Doc. 93) is GRANTED.

2. The United States Bureau of Prisons shall file a report addressing the remaining three prongs of the *Sell* test by no later than September 21, 2020.

**ORDERED** in Tampa, Florida, this 21st day of August 2020.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE